IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL TAPHORN, | |
| Plaintiff, | **8:23CV339** |
| v. | |
| UNION PACIFIC RAILROAD CO., | **MEMORANDUM**<br>**AND ORDER** |
| Defendant. | |

This matter is before the Court on defendant Union Pacific Railroad Co.'s ("Union Pacific") Motion to Strike (Filing No. 74) plaintiff Michael Taphorn's ("Taphorn") Rule 26(a)(2) retained expert report of Jason B. Garlie, M.D. ("Dr. Garlie") (Filing No. 67-15). *See* Fed. R. Civ P. 37(c). In that vein, Union Pacific also asks the Court to strike Taphorn's brief in opposition to summary judgment (Filing No. 64) and statement of additional facts (Filing No. 65), which both rely on Dr. Garlie's opinions. For the reasons set forth below, the Court will strike those documents.

## I.    BACKGROUND

Taphorn began his career with Union Pacific in 1980. After he had a cardiac pacemaker implanted in 2019, Union Pacific placed permanent work restrictions on him which ultimately resulted in his removal from service. He then sued Union Pacific under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 and 12112(b)(6) on August 4, 2023, alleging Union Pacific discriminated against him because of his disability and used its fitness-for-duty procedure ("FFD") to "screen out" individuals with disabilities like him.

Fast forward a year into the litigation, and on August 30, 2024, Taphorn disclosed two retained experts, Kevin L. Trangle, M.D. ("Dr. Trangle"), an occupational-medicine doctor, and Melissa Snelson, an economist—along with two of his treating providers as

non-retained experts.  By an amended case progression order entered on September 30, 2024 (Filing No. 31), the Court set October 18, 2024, as the deadline for Union Pacific to disclose its own experts, and gave Taphorn until November 15, 2024, to disclose any rebuttal experts.  Abiding by that timeline, Union Pacific disclosed John Holland, M.D. ("Dr. Holland") and Brian D. Lowes, M.D. ("Dr. Lowes") as non-retained experts  (Filing No. 76-3).

Discovery then progressed to depositions.  Union Pacific deposed Dr. Trangle on March 12, 2025  (Filing No. 76-4).  Taphorn deposed Dr. Holland on March 28, 2025, and Dr. Lowes on May 2, 2025 (Filing No. 76-4).  When told the parties needed more time to complete depositions (Filing No. 45), the Court pushed the discovery deadline to August 4, 2025 (Filing No. 46).

Then came the surprise leading to this discovery dispute.  On July 30, 2025—just a few days before discovery was set to wrap up—Taphorn produced a new expert, Dr. Garlie, along with a supplemental report.  For the first time, Taphorn explained in an email to Union Pacific's counsel that he needed a rebuttal expert to counter what Dr. Holland and Dr. Lowes had said in their depositions (Filing No. 78-1).  Specifically, Taphorn's counsel complained that when asked about the likelihood of Taphorn's pacemaker failing, Dr. Holland and Dr. Lowes had both estimated "somewhere between 1- and 2-percent per year."  In Taphorn's view, Union Pacific's October-2024 expert disclosures were deficient because they failed to summarize the facts and opinions its experts intended to offer, including the "1-2%" opinion.  *See Christensen v. Union Pac. R.R.*, No. 8:23CV268, 2025 WL 1192408, at *3 (D. Neb. Apr. 24, 2025) (noting that while non-retained experts need not provide a written report of their opinions, Rule 26(a)(2)(C) "requires disclosure of the pertinent facts and opinions to which the expert will testify," rather than just a "general identification" of the topic).  And because he thought Union Pacific's Rule 26 disclosures from 2024 were "deficient" and omitted the "1-2%" failure rate, he argues he only had two choices: (1) move to exclude the testimony about a "1-2%" failure rate or (2) go find a new

2

"rebuttal" expert (Filing No. 78-1).  He chose the latter.  He then offered to allow Union Pacific to join him in asking the Court to once again extend the "case deadlines" so that Union Pacific could depose Dr. Garlie.  If Union Pacific didn't like that option and preferred to move for sanctions under Rule 37,  he suggested the parties first participate in a discovery conference with the magistrate judge.

At the telephonic conference that followed (Filing Nos. 50, 72, 79), Union Pacific told a different story.  From its perspective, Taphorn had been aware of Dr. Holland's and Dr. Lowes's "1-2%" responses since their depositions were taken in March and May but had said nothing until the end of July.  And apart from the "1-2%" responses, Dr. Holland's and Dr. Lowes's opinions on the risk of pacemaker failure were summarized in a detailed FFD memorandum.  That memorandum has been in Taphorn's possession since May 2019 because it was given to him to as part of his FFD evaluation.  It was also disclosed to Taphorn's counsel on March 29, 2024 (Filing No. 78-4).  As for the "1-2%" opinion that supposedly necessitated a brand-new expert witness, Union Pacific pointed out that Taphorn's counsel elicited that opinion during the depositions.  Union Pacific stated it did not intend to offer any particular percentage at summary judgment or trial.  And Taphorn's own expert, Dr. Trangle, had already weighed in on the issue, calling pacemaker failure "exceedingly unlikely."  In short, there was nothing for Taphorn to "rebut" and certainly no need for a new expert to do it.

Taphorn's counsel seemingly agreed that any gaps in Union Pacific's Rule 26(a)(2) disclosures are "harmless"—provided Union Pacific does not offer the "1-2%" figures— because Taphorn has had the FFD memorandum summarizing the experts' opinions since at least 2024 (Filing No. 79).  He further explained that had Dr. Holland and Dr. Lowes limited their responses to characterizing the likelihood of pacemaker failure as an "unacceptable risk," then he would have had "no basis to hire a rebuttal expert" (Filing

3

No. 79).[1] But because they answered his questions about failure rate with a percentage, as he sees it, that kicked open the door for him to hire a new "rebuttal" expert at the eleventh hour (Filing No. 79). Taphorn contends bringing in this new expert witness "just resets the status quo."

Once Taphorn stated he would have had "no basis to hire a rebuttal expert" without those percentages and Union promised not to use them, that should have been the end of this. As the magistrate judge patiently explained to Taphorn's counsel, "the status quo is on [Union Pacific's side.]" If Union Pacific is "not going to be putting on any testimony about percentage" then "there's no need for rebuttal experts" and "we're good to move forward with dispositive motion practice."[2]

Undeterred by the magistrate judge's sage advice, Taphorn's counsel explained that because he had already "hired" Dr. Garlie and "paid him a substantial amount of money" he "want[s] to use his opinion regardless of whether Union Pacific offers the 1 to 2 percent opinion" (Filing No. 79). This candid admission undermines any notion that Dr. Garlie is a true "rebuttal" witness.

The magistrate judge ended the teleconference by denying Taphorn's "implied motion to extend the rebuttal expert disclosure deadline" and issued clear guidance: if Union Pacific does not offer the "1-2%" opinion at summary judgment, then Taphorn has no justification to offer Dr. Garlie's "rebuttal" opinions. Doing so, the magistrate judge cautioned, would not be substantially justified or harmless. *See Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 703 (8th Cir. 2018).

---

[1] During the call, counsel conceded, "Had those one to two percent opinions not been given in their depositions . . . I would not have ever hired Dr. Garlie."

[2] The magistrate judge was unmistakably clear: "This is really a nonissue because [Taphorn] doesn't need the rebuttal expert." Union Pacific has said "we're not going to be putting in the 1 to 2 percent for any motion, hearing or trial . . . [Taphorn's] expert opinion is that risk is 'exceedingly unlikely' and defendant's opinions through the nonretained experts is that it was an 'unacceptable risk.'" That is the "status quo."

On September 18, 2025, Union Pacific moved for summary judgment (Filing No. 54) without mentioning the "1-2%" opinion. Nonetheless, Taphorn relied on Dr. Garlie's opinions in his response brief (Filing No. 64), his statement of additional facts (Filing No. 65), and his index of evidence (Filing No. 67-15). Predictably, Union Pacific has moved to strike those documents and exclude Dr. Garlie's opinions under Rule 37(c).

## II.   DISCUSSION

### A.   Motion to Strike

Rule 26(a)(2)(A) requires a party to "disclose the identity of any witness it may use at trial to present" expert testimony. Fed. R. Civ. P. 26(a)(2)(A). Expert witnesses "retained or specially employed to provide expert testimony in the case" must provide a written report with their disclosure. Fed. R. Civ. P. 26(a)(2)(B). For experts that are not specifically retained for litigation, parties must disclose their identity and "the subject matter on which the witness is expected to present" expert opinion testimony and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). A party must make such disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). And when the "evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party" "the disclosures must be made" "within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D).

Rule 37(c) gives Rule 26(a) its proverbial teeth. *Vanderberg*, 906 F.3d at 702 (citing 8B Charles A. Wright, Arthur R. Miller *et al.*, *Federal Practice and Procedure* § 2289.1 (3d ed. 2018)). Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In other words, if a party does not satisfy the expert disclosure requirements in Rule 26(a)(2), the undisclosed information or expert is excluded unless the failure was substantially justified or harmless." *Vandberg*, 906 F.3d at 703; *see also Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th

5

Cir. 1998) (noting that a "failure to disclose in a timely manner is equivalent to failure to disclose").

There is no question that Taphorn failed to timely disclose Dr. Garlie's opinions and report. The deadline for any expert rebuttal disclosure was November 15, 2024 (Filing No. 31), and Taphorn disclosed Dr. Garlie on July 30, 2025. Even though Taphorn argues Dr. Garlie's opinions are intended solely to rebut evidence that "emerged" during Dr. Holland's and Dr. Lowes's depositions, he did not disclose Dr. Garlie's opinions or—even express his need for a rebuttal witness—"within 30 days after" Union Pacific's alleged disclosure. Fed. R. Civ. P. 26(a)(2)(D). Because Taphorn "did not satisfy the disclosure requirements in Rule 26(a)(2)," Dr. Garlie's opinions must be "excluded unless the failure was substantially justified or harmless." *Vanderberg*, 906 F.3d at 703; *see also Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (observing that the exclusion of "information or testimony" which was not timely disclosed is a "self-executing sanction").

### 1.    Substantial Justification or Harmlessness

In deciding whether a Rule 26 violation is justified or harmless, the Court considers several factors, including "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which the introduction of such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Rodrick v. Wal-Mart Stores East, L.P.*, 666 F.3d 1093, 1096-97 (8th Cir. 2012) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002)). But the Court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness." *Id.* at 1097.

In light of the relevant factors, the Court finds Taphorn's late disclosure is not substantially justified. The "1-2%" opinion is Taphorn's only basis for retaining Dr. Garlie as a "rebuttal" witness. Yet after a lengthy teleconference with the magistrate judge where Union Pacific disclaimed any intent to offer or rely on percentages, either at summary

6

judgment or at trial, Taphorn's counsel said he planned to use Dr. Garlie's "rebuttal" opinions anyway. Such recalcitrance is no justification.

Taphorn also fails to persuade the Court that his late disclose is harmless. While the magistrate judge found the issue of a Rule 37 violation was not ripe at that time, *see Petrone v. Werner Enters., Inc.*, 940 F.3d 425, 434-35 (8th Cir. 2019), he warned Taphorn that disclosure this late in the game would not be substantially justified or harmless. He was right. Union Pacific has already filed its motion for summary judgment and has not been able to depose Dr. Garlie within the case-progression deadlines. Union Pacific's summary judgment motion does not reference the "1-2%" opinion. This case has been pending since 2023. The magistrate judge already considered this issue and found there was no good cause to extend the disclosure deadlines (Filing No. 50). Taphorn never objected to that order by the magistrate judge. To cure the late disclosure of Dr. Garlie, discovery would need to be reopened. Allowing a new expert witness at this late stage would further delay any trial. All of this would also require Union Pacific to incur additional expenses. Thus, Taphorn's failure to comply with Rule 26(a)(2) was not harmless.

### 2.    Remedy for Untimely Disclosure of Expert Testimony

"When a party fails to provide information or identify a witness in compliance with Rule 26(a)," the Court has "wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener*, 527 F.3d at 692. In addition to prohibiting Taphorn from using Dr. Garlie's opinions, the Court may, "order payment of the reasonable expenses, including attorney's fees, caused by the failure" to make the timely disclosure. Fed. R. Civ. P. 37(c)(1)(a); *accord Vanderberg*, 906 F.3d at 703 (explaining that in addition to excluding improperly disclosed expert testimony, "the district court may, on a party's motion, impose an additional or alternative sanction").

In determining the appropriate remedy for the untimely disclosure of expert testimony, the Court considers, "the reason for noncompliance, the surprise and prejudice

to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692 (citing *Sellers v. Mineta*, 350 F.3d 706, 711-12 (8th Cir. 1995)).

Regarding the reason for noncompliance, Taphorn argues Union Pacific caused his late disclosure by failing to provide a "summary of the facts and opinions" for Dr. Holland and Dr. Lowes, as required by Rule 26(a)(2)(C). This argument is unavailing. As explained above, Taphorn was well aware of Dr. Holland's and Dr. Lowes' opinions because Dr. Holland wrote a detailed FFD memorandum that Taphorn has admitted he's had since at least March 29, 2024 (Filing No. 78-4). And Taphorn's counsel told the magistrate judge that Union Pacific's "deficient" Rule 26(a)(2) disclosures were "harmless" because the information was in that memorandum (Filing No. 79). Taphorn cannot sit on these allegedly deficient (yet harmless) omissions and then use them to sandbag Union Pacific months later. While the "1-2%" opinion was not in the FFD memorandum, Union Pacific has not relied on the "1-2%" opinion and has disclaimed any intention to do so.

The second factor is the surprise and prejudice to Union Pacific. As mentioned above, Taphorn disclosed Dr. Garlie's expert report eight months after the deadline to disclose any rebuttal experts and offered it for the first time in opposition to summary judgment. Taphorn's late disclosure at this stage significantly prejudices Union Pacific as discovery has closed and Union Pacific has already moved for summary judgment.

Next, the Court considers the extent to which allowing this information or testimony would disrupt the order and efficiency of the trial. If the Court allowed expert opinion testimony from Dr. Garlie, fairness would dictate that Union Pacific should have the opportunity to depose him and, potentially, to seek responsive opinion testimony of its own. Discovery would have to be reopened and again extended, disrupting the order and efficiency of this case.

The final factor is the importance of the information. The Court does not doubt that an additional expert could be beneficial to Taphorn. However, Taphorn has already disclosed an expert who has addressed the risk of pacemaker failure, Dr. Trangle. In summary, all the factors weigh in favor of exclusion.

Taphorn's extremely late disclosure was unjustified, and what followed only made matters worse. Rather than formally moving to extend the expert rebuttal deadline or objecting to the magistrate judge's order denying his implied motion, Taphorn disregarded the magistrate judge's warnings and deadlines and offered the opinion anyway. Exclusion of Dr. Garlie's opinions is warranted in this case.

There is one last issue to consider: Union Pacific's request for attorney's fees. Given the willfulness of Taphorn's Rule 26(a) violation, the Court finds that monetary sanctions under Rule 37(c) are appropriate in this case. *See* Fed. R. Civ. P. 37(c)(1)(A). The Court will allow Union Pacific twenty-one days to submit calculations of reasonable attorney's fees and costs expended in support of its Rule 37(c) motion. Accordingly,

IT IS ORDERED:

1.  Defendant Union Pacific Railroad Co.'s Motion to Strike (Filing No. 74) is granted.

2.  Plaintiff Michael Taphorn's brief in opposition to the summary judgment motion (Filing No. 64), his Statement of Additional Material Facts (Filing No. 65), and Federal Rule of Civil Procedure 26(a)(2) retained expert report of Jason B. Garlie, M.D. (Filing No. 67-15) are stricken.

3.  Taphorn may file a replacement brief in opposition to summary judgment on or before May 18, 2026.

4.  Union Pacific may file a reply brief on or before June 1, 2026.

5.  Union Pacific may submit materials in support of its request for reasonable attorney's fees and costs associated with its Rule 37(c) motion on or before May 25, 2026. Taphorn may file a response on or before Friday June 5, 2026.

9

Dated this 4th day of May 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge